[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The defendant (applicant) herein has filed an application with the court requesting a reassessment of damages as set forth in a Certificate of Taking filed by the Commissioner of Transportation for property owned by the applicant Peter J. Vartelas, Trustee, and located on the southwesterly side of Division Street in the Town of Derby.
The Certificate of Taking or Notice of Condemnation was filed with the court on December 11, 1998, pursuant to §§ 13a-73 (b) and 13a-73 (e) of the Connecticut General Statutes. The taking was for a full and perpetual easement to slope for the support of the highway within an area of 12,790 square feet more or less deemed necessary for the layout, alteration, extension, widening, change of grade, drainage and improvement of the bridge commonly known as Bridge No. 04183.
The taking included a Right of Entry to construct driveways, install CT Page 7721 sedimentation control systems, reset sanitary sewer manholes, relocate and reset a six-foot chain link fence and relocate gate posts. These rights are to terminate automatically upon completion of the work by the State.
Damages were assessed at $15,350.00. From this assessment the applicant has appealed and is seeking a reassessment of the damages. The undersigned Judge Trial Referee has heard the evidence presented by both parties and has viewed the subject property and its surroundings and makes the following findings.
In arriving at its decision, the court is aware of the fact that the Commissioner of Transportation is taking a perpetual easement and, while the applicant will retain a fee simple interest in the property, he will do so subject to the easement acquired by the Department of Transportation.
"The owner of land taken by condemnation is entitled to just compensation. Conn. Const. Art. I 11. If the taking is partial, the usual measure of damages is the difference between the market value of the whole tract with its improvements before the taking and the market value of what remained of it thereafter. Severance damages to the parcel remaining are thereby included . . . The `fair market value' is the price that . . . would result from fair negotiations between a willing seller and a willing buyer. The valuation should ordinarily be based on the "highest and best' possible use of the land. . . . Where only a portion of a tract is taken for public use, the award will include the value of the part taken as well as any damages visited the remainder as a result of the taking. . . . These principles of Connecticut law reflect the judicial philosophy that just compensation requires that the condemnee shall be put in as good condition pecuniarily as he would have been in had the property not been taken." (Internal citations omitted). Laurel,Inc. v. Commissioner of Transportation of Conn., 180 Conn. 11, 36-38.
The subject property at the time of the taking was zoned I-1 Industrial. This designation, however, allowed any commercial use found in a C-3 zone. The court noted that during its view of the premises that almost all of the surrounding area was being used for commercial purposes.
In determining the fair market value of property, the court must first determine the highest and best use. "`The highest and best use' concept, chiefly employed as a starting point in estimating the value of real estate by appraisers, has to do with the use that will most likely produce the highest market value, greatest financial return, or the most profit from the use of a particular piece of real estate." MetropolitanCT Page 7722District v. Burlington, 241 Conn. 382, 390 (1997).
The court finds that the highest and best use of the subject property is for commercial purposes. One has only to observe the surrounding area to reach this conclusion. it has been developed to a high degree for commercial uses. The property itself is of an irregular shape with the front portion being rectangular and consisting of approximately one acre. This portion should be developed separately from the remainder as a small retail outlet or fast food establishment. The rear portion should be developed for a larger retail use. It is obvious to any onlooker that because of the configuration of the property the front portion is more valuable and should be developed for a fast food use or a small retail outlet. The remaining portion should be developed for a larger retail use. This is evident when one examines the history of the property. Prior to the taking, the only interest displayed was for the front portion. Subsequent to the taking, the property had been sold to BJ's, a large wholesale-type of commercial outlet. It is their intention to develop the front portion for some type of fast food outlet.
In reviewing the various sales, the court is of the opinion that the comparable with the most impact is the sale some few hundred feet away on Division Street to the Munroe Muffler Co. While this sale took place approximately two years prior to the taking, the evidence disclosed that the values in that area, if anything, increased during that time.
Both parties have indicated that the impact of the various easements on the property impacted its use by as much as 50 percent. The court is of the opinion that the easements over the subject property have a greater impact on its value. There are additional easements along the easterly boundary and their impact on the overall value must be considered. They include an easement to the United States of America for flood control purposes along the Naugatuck River and immediately adjacent to the flood control dike a 20 foot wide easement to Eugene Micci, Trustee, for access to the property to the rear.
While the value of the Monroe Muffler site is established at $9.36 per square foot, the various easements as they existed at the time of the taking have a negative effect on the value of the front acre. The court measures this at 15 percent, thus giving to the front part of the subject property a value of $7.96 per square foot.
The court finds that there are no consequential damages to the remainder of the property so that its before and after value would remain the same.
The court finds that the property included in the taking area was CT Page 7723 impacted by approximately 50 percent by already existing easement and its value was further impacted an additional 50 percent by the easement taken by the Commissioner of Transportation. Based on these conclusions and the court's finding a square foot value of $7.97, the court assesses damages in the amount of $35,000.00.
The court, pursuant to § 13a-76 of the General Statutes, awards to the applicant a reasonable appraisal fee in the amount of $3,500.00.
Judgment may enter in the amount of $19,500.00, that being the difference between the damages assessed by the court and the assessment paid into court by the Commissioner of Transportation.
 The Court Curran, J.